IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JOSEPH PODESZWA, II,   )<br>  )<br>  Plaintiff,   )<br>  )<br>v.   )<br>  )<br>KILOLO KIJAKAZI,   )<br>Acting Commissioner of Social Security,   )<br>  )<br>  Defendant.   )<br>  ) | CASE NO. 3:21-cv-223-JTA<br>(WO) |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), the claimant, Joseph Podeszwa, II ("Podeszwa"), brings this action to review a final decision by the Commissioner of Social Security ("Commissioner"). (Doc. No. 1.)[1] The Commissioner denied Podeszwa's claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the exercise of dispositive jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 19, 20.)

After careful scrutiny of the record and the parties' briefs, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

I.   **PROCEDURAL HISTORY AND FACTS**

Podeszwa was 46 years old at the time of his alleged disability onset date of March 1, 2014.[2]  (R. 81.)[3]  He earned his General Educational Development (GED) and completed some college courses.  (R. 44.)  He previously worked as a computer technician.  (R. 278.)  Podeszwa sought a disability determination due to blind or low vision, depression, chronic obstructive pulmonary disease ("COPD"), back injury, arthritis, blood clots, and high blood pressure.  (R. 277.)

On December 27, 2017, Podeszwa protectively filed for a period of disability and DIB under Title II (42 U.S.C. §§ 401, *et seq*.), and filed an application for SSI under Title XVI (42 U.S.C. §§ 1389, *et seq*.).  (R. 243-251.)  These claims were initially denied.  (R. 79-114.)  Podeszwa requested an administrative hearing.  (R. 156.)  The hearing was held before an Administrative Law Judge ("ALJ") on December 4, 2019.  (R. 36-78.)  The ALJ returned an unfavorable decision on January 15, 2020.  (R. 20-31.)  Podeszwa sought review by the Appeals Council and it denied his request.  (R. 4-8.)  Thus, the hearing decision became the final decision of the Commissioner.[4]

---

[2] During the administrative hearing, Podeszwa requested the onset date be amended to December 30, 2016.  (R. 41, 45.)  This amendment request is not addressed in the ALJ's decision.  (R. 20-31.)

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (*See* Doc. No. 14.)

[4] "When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, [the court] review[s] the ALJ's decision as the Commissioner's final decision."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted).

2

On March 16, 2021, Podeszwa filed the instant action seeking review of the Commissioner's final decision.  (Doc. No. 1.)  The parties have briefed their respective positions.  (Docs. No. 12, 13, 17.)  Hence, this matter is ripe for review.

## II.     STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive" when "supported by substantial evidence."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).  Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id.* at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Dyer*, 395 F.3d at 1210; *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019).  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

Sentence four of 42 U.S.C. § 405(g) authorizes the district court to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The district court may remand a case to the Commissioner for a rehearing if the court finds "either . . . the decision is not supported by substantial evidence, or . . . the Commissioner or the ALJ incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996).

### III.    STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security DIB and SSI must prove that he is disabled.[5]  *See* 20 C.F.R. § 404.1505; 20 C.F.R. § 416.920.  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  The evaluation is made at the hearing conducted by the ALJ.  *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  "Substantial gainful activity" is work activity

---

[5] Although DIB and SSI are separate programs, the standards for determining disability are identical.  *See Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986); *Miles v. Soc. Sec. Admin., Comm'r*, 469 F. App'x 743, 744 (11th Cir. 2012).

4

that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that he is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). The ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. § 404.1560(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(g)(1). In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c). Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number

of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV. ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ in this case found that Podeszwa met the insured status requirements of the Social Security Act through December 31, 2016. (R. 22.) The ALJ also found that Podeszwa had not engaged in substantial gainful activity since March 1, 2014, the alleged onset date. (*Id.*) The ALJ found Podeszwa had severe impairments of obesity, history of pulmonary embolism and deep vein thrombosis of the left lower extremity, chronic lymphedema of the legs, and detached right retina. (*Id.*) Nevertheless, the ALJ concluded that Podeszwa's severe impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 24.)

After consideration of the entire record, the ALJ determined that Podeszwa has the RFC to perform light work[6] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except Podeszwa has the following limitations:

---

[6] Title 20 of the Code of Federal Regulations defines light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

> [He] can lift and carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours, and stand and/or walk 6 hours. [He] can never climb ladders, ropes, or scaffolds, crouch, kneel, or crawl, but he can occasionally climb ramps and stairs, stoop, and balance. [He] can occasionally push orpull [sic] with the bilateral lower extremities. He can have no exposure to extreme cold and pulmonary irritants such as dusts, gases, fumes, noxious odor, and poorly ventilated areas. He is capable of frequent near and far acuity. He is capable of occasional depth perception and is able to appreciate and avoid common workplace hazards.

(R. 25.) The ALJ determined that Podeszwa is unable to perform past relevant work. (R. 29.)

After considering Podeszwa's age, education, work experience, and RFC, and having the benefit of testimony from a vocational expert ("VE"), the ALJ concluded that jobs exist in significant numbers in the national economy that Podeszwa can perform. (R. 29, 30.) The ALJ further concluded that Podeszwa had not been under a disability from March 1, 2014, through the date of the hearing decision. (R. 21.) The ALJ determined that, based on the application for a period of disability and DIB filed on December 27, 2017, Podeszwa is not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. 30.) The ALJ further determined that, based on the application for SSI filed on December 27, 2017, Podeszwa is not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id.*)

## V.   DISCUSSION

Podeszwa raises three issues on appeal. (Doc. No. 12.) First, Podeszwa argues the ALJ failed to evaluate his stasis dermatitis pursuant to Listing 8.05. Second, Podeszwa argues the ALJ failed to evaluate his chronic venous insufficiency under Listing 4.11. Third, Podeszwa argues the RFC finding is not based on substantial evidence.

The Court addresses each of Podeszwa's arguments below.

A. Listing 8.05

Podeszwa contends the ALJ failed to find his stasis dermatitis as a severe impairment at step two of the sequential evaluation process. Podeszwa refers to multiple reports between March 2018 and September 2019 which note, in relevant part, swelling of his lower extremities accompanied by skin discoloration or skin changes, and healed ulcers. Podeszwa notes that these reports include diagnoses of stasis dermatitis of both lower extremities with history of deep vein thrombosis. Podeszwa also notes that one report found he had mildly diminished sensation in both of his feet. Podeszwa does not mention the treatment that he received during these reports nor his response to the treatment, but he asserts that he "has stasis dermatitis with extensive skin lesions that has persisted for at least 3 months despite continuing treatment as proscribed." (Doc. No. 12 at 11.) Thus, Podeszwa argues he has presented evidence establishing that his condition meets Listing 8.05 and concludes that the ALJ's failure to evaluate his claim under the listing warrants remand. The Commissioner argues Podeszwa has not shown he met or equaled Listing 8.05.

As stated previously by this Court,

> A plaintiff is disabled if his or her impairment meets or equals a Listing. 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. §§ 404.1525(a)-(d)). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings," *Id.* at 1224 (citing 20 C.F.R. § 404.1526(a)). A claimant's impairments must meet or equal *all* of the

> specified medical criteria in a particular Listing for the claimant to be found disabled at step three. *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990). An impairment manifesting only some of the criteria does not qualify, no matter how severe. *Id.* at 530. It is a claimant's burden at step three to prove disability. *Id.* at 532-33. The burden is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* at 532.

*Hayes v. Saul*, No. 1:19-CV-627-SRW, 2020 WL 5413774, at *5 (M.D. Ala. Sept. 9, 2020).

The ALJ did not explicitly address Listing 8.05, but the examination of the record by the ALJ demonstrates that the ALJ implicitly found that Podeszwa does not meet or equal that listing. *See Flemming v. Comm'r of Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) ("While the ALJ is required to consider the Listing of Impairments in making a decision at step three, we do not require an ALJ to 'mechanically recite' the evidence or listings [ ]he has considered. . . . Therefore, in the absence of an explicit determination, we may infer from the record that the ALJ implicitly considered and found that a claimant's disability did not meet a listing.") (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). While summarizing the medical record, the ALJ noted that "[p]hysical examinations in 2018 and 2019 typically showed edema of the lower extremities and mildly diminished sensation on both feet." (R. 26.) The ALJ further noted that treatment notes showed "normal strength, tone, gait, and station, but some edema bilaterally in the lower extremities." (*Id.*) The ALJ opined, "[a]lthough not explicitly stated, [Podeszwa's] leg symptoms appear to be exacerbated by this obesity." (*Id.*) The ALJ concluded that Podeszwa "does not have an impairment or combination of impairments that meets or medically equals the severity of some of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1." (R. 24.)

Listing 8.05 provides for an award of benefits based on dermatitis. Specifically, the listing states:

> **8.05 *Dermatitis*** (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed.

20 C.F.R. Part 404, Subpt. P, App. 1, § 8.05. Listing 8.00(C) describes extensive skin lesions as follows:

> Extensive skin lesions that involve multiple body sites or critical body areas, *and result in a very serious limitation*. Examples of extensive skin lesions that result in very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. Part 404, Subpt. P, App. 1, § 8.00(C) (emphasis added).

Podeszwa has not met his burden of showing that he meets the requirements of Listing 8.05 because the record evidence does not show that he had "extensive skin lesions" as defined in the regulation. Though the record shows Podeszwa had dermatitis, ulcers and and skin changes, it does not show that these conditions "resulted in a very serious limitation." *Id*. Rather, the record shows that Podeszwa had normal musculoskeletal findings, including normal strength, tone, intact extremity range of motion, and normal ability to walk or ambulate. (R. 518, 523-25, 538, 608, 645, 652-53, 669, 677, 680, 722.) Contrary to Podeszwa's argument, the notations of "mildly diminished sensation" in his

feet alone does not establish a "very serious limitation." Nor is there evidence in the record establishing that this mildly reduced sensation caused him any ambulatory limitations, adversely impacted his joint movement, or limited his ability to perform fine and gross motor movements. Substantial evidence therefore supports the ALJ's implicit determination that Podeszwa's dermatitis did not meet the requirements of Listing 8.05. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (noting disability claimant's burden to demonstrate that impairment meets "all of the specified medical criteria" (emphasis in original)). The Court therefore finds that no reversible error on this issue.

B. Listing 4.11

Podeszwa argues the ALJ's explanation for finding he does not meet or equal Listing 4.11 is flawed and not based on substantial evidence. He argues that the listing does not require him to produce medical imaging confirming the presence of deep vein thrombosis and the ALJ was unable to determine the presence of deep vein thrombosis in his peroneal vein in May 2018 because the vein in his left leg was not visible during a venous study. Podeszwa concludes that this issue warrants remand with instruction to properly consider this listing. The Commissioner argues Podeszwa has not shown he met or equaled Listing 4.11.

Listing 4.11 concerns chronic venous insufficiency. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 411. Listing 4.11 defines chronic venous insufficiency as requiring an "incompetency or obstruction of the deep venous system" and (a) "[e]xtensive brawny edema" involving "at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip" or (b) "[s]uperficial

11

varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment." *Id.*

After finding history of deep vein thrombosis was one of Podeszwa's severe impairments at step two, the ALJ found that the medical evidence does not meet Listing 4.11 at step three. (R. 25.) The ALJ stated:

> There is no evidence of a lower extremity with incompetency or obstruction of the deep venous system and one of the following: A. Extensive brawny edema (see 4.00G3) involving at least two-thirds of the leg between the ankle and knee or the distal one-third of the lower extremity between the ankle and hip, OR, B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment. . . .

(R. 25.) Throughout the summary of the medical evidence, the ALJ noted that Podeszwa had a history of deep vein thrombosis of the left lower extremity. (R. 26.) The ALJ also noted that Podeszwa was seen several times in 2017 and 2018 in the emergency room for leg swelling but no deep vein thrombosis was found. (*Id.*) The ALJ further noted that in May and October 2018, imaging confirmed no presence of deep vein thrombosis. (*Id.*)

Substantial evidence supports the ALJ's finding that Podeszwa's impairments did not meet or medically equal the requirements for Listing 4.11.[7] In May 2016, a vascular lab study showed "[l]eft lower extremity deep venous thrombosis with characteristics suggestive of an acute process" and "[n]o evidence of acute or chronic right lower extremity venous thrombosis[.]" (R. 494.) Podeszwa was prescribed a blood thinner for

---

[7] The Court remains mindful that it is not tasked with reweighing the evidence presented to the ALJ. Even if this Court may have reached a different decision, if the ALJ's decision was supported by substantial evidence, it will not be disturbed. *See Dyer*, 395 F.3d at 1210.

treatment and years later, when another vascular lab study was performed in May 2018, "no major evidence of deep venous thrombosis [was] detected in the lower extremities[.]" (R. 660.) Though the records show an "assessment" of venous insufficiency and chronic deep vein thrombosis in Podeszwa's femoral vein of left lower extremity from 2018 to 2019, no imaging was included in those records. (R. 551-578.)

Even assuming that the "incompetency or obstruction of the deep venous system." requirement was satisfied, Podeszwa has not met the other requirements. The listing defines "extensive brawny edema," as "swelling that is usually dense and feels firm," is "associated with characteristic skin pigmentation changes," and "generally does not pit (indent on pressure)." 20 C.F.R. Part 404, Subpart P, App'x 1, § 4.00(G)(3). The record evidence does not show that Podeszwa had "extensive brawny edema" as defined in the regulation as the records show that his edema was consistently described as "pitting" edema. (R. 560, 565, 570, 573, 576.) In addition, though the record evidence shows that Podeszwa suffered from ulceration and stasis dermatitis, there is no clear indication that the ulceration was recurrent or did not heal after three months of treatment. (R. 558, 563, 568, 570, 572, 573, 576.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.11. Accordingly, a reasonable person would accept the ALJ's finding that Podeszwa did not satisfy the criteria for disability under Listing 4.11. Thus, substantial evidence supports the ALJ's determination. *See Crawford*, 363 F.3d at 1158.

Further, Podeszwa's arguments are unpersuasive. The 2018 vascular lab study, upon which Podeszwa relies, includes the "impression" that "no major evidence of deep venous thrombosis [is] detected in the lower extremities at this time." (R. 660.) Contrary

to his assertion, the ALJ was required to consider imaging in evaluation of Podeszwa's disability claims,[8] thus there was no error in the ALJ considering the lack of imaging showing deep vein thrombosis in 2018. Podeszwa appears to forget that he has the burden of demonstrating that his impairment meets "all of the specified medical criteria" for Listing 4.11. *See Sullivan*, 493 U.S. at 530. Hence, the Court finds no reversible error.

   C. RFC Finding

Podeszwa contends the RFC is not based on substantial evidence. He argues the ALJ found the opinion of Dr. Scott Touger ("Dr. Touger") persuasive but fashioned an RFC that is far less restrictive than Dr. Touger's opinion relating to his depth perception. The Commissioner argues any discrepancy between the RFC and Dr. Touger's depth perception opinion would not warrant remand of this case.

The regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). "The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.' " *Milner v. Barnhart*, 275 F.

---

[8] *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 4.00(G)(2) ("We will assess your limitations based on your symptoms together with physical findings, Doppler studies, other appropriate non-invasive studies, or angiographic findings.").

App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* Social Security Ruling 96-6p (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources).

The regulations governing claims filed on or after March 27, 2017, abandon the requirement that the ALJ must give "good reasons" for the weight given medical opinions and prior administrative medical findings. *See Nix v. Saul*, Case No. 4:20-cv-00790-RDP, 2021 WL 3089309, at * 6 (N.D. Ala. July 22, 2021). The regulations now direct the ALJ to evaluate the persuasiveness of each medical source using the following five factors: (1) supportability, (2) consistency, (3) length of relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 416.920c(c). The ALJ must explain in his decision how he considered the factors of supportability[9] and consistency[10] in his determination of overall persuasiveness of each source. *Nix*, 2021 WL 3089309, at *6; 20 C.F.R. § 416.920c(b)(2) ("[S]upportability . . . and consistency . . . are [t]he most important factors we consider . . . [t]herefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision."). The persuasiveness analysis should turn on whether "the medical source's opinion is (1) supported by the source's own records

---

[9] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1).

[10] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

15

and (2) consistent with other evidence of record." *Dease v. Kijakazi*, No. 2:20-CV-394-KFP, 2022 WL 428173, at *3 (M.D. Ala. Feb. 11, 2022). The ALJ is not required to explain how he considered the remaining factors unless he finds two or more medical opinions are equally well-supported and consistent with the record but are not exactly the same. *Gogel v. Comm'r Soc. Sec.*, No. 2:20-CV-366-MRM, 2021 WL 4261218, at *6 (M.D. Fla. Sept. 20, 2021).

In addition to assessing a claimant's medical evidence, an ALJ is responsible for determining a claimant's RFC. *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (citing 20 C.F.R. § 404.1546(c)). A claimant's RFC is an administrative finding as to the most the claimant can do despite his limitations and is based on all the relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 416.945. "Once the ALJ has determined the claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence." *Talton v. Kijakazi*, No. CV 20-00543-B, 2022 WL 822158, at *6 (S.D. Ala. Mar. 17, 2022) (citing *Flynn v. Heckler*, 768 F.2d 1273, 1274 (11th Cir. 1985)). If the ALJ's determination of the claimant's RFC is supported by substantial evidence, then the court cannot overturn the conclusion reached by the ALJ. *Shue v. Comm'r of Soc. Sec.*, 817 F. App'x 906, 908 (11th Cir. 2020) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also* 42 U.S.C. § 405(g).

The state agency denial of Podeszwa's application for DIB includes an RFC assessment by Dr. Touger. (R. 92-95.) Dr. Touger opined that Podeszwa had exertional limitations, postural limitations, visual limitations and environmental limitations. (R. 92-

94.) As to visual limitations, Dr. Touger opined that Podeszwa was limited in both eyes for near acuity, far acuity, depth perception and accommodation. (R. 94.) Dr. Touger also opined that Podeszwa's color vision and field vision were unlimited. (*Id*.) Dr. Touger explained:

> Vision noted at CE to be 20/70 left eye and 20/200 right eye corrected. As such, [Podeszwa] should be able to avoid workplace hazards, no motor vehicle operation despite his report he is currently driving. DOT should be notified of visual deficit. May have problems working with small objects such as beads and thread. Unable to read telephone book sized print or smaller. Occasional reading of standard size print is possible as [Podeszwa] reports he spends a sizeable amount of time surfing the internet. Can work with larger objects unrestricted. No unprotected heights or hazardous machinery with moving parts. Tasks requiring depth perception will not be possible.

(*Id*.) Based upon the RFC assessment, the state agency determined that Podeszwa had the RFC to perform light work. (R. 96.)

The ALJ discussed Podeswa's visual limitations in the administrative decision. (R. 27.) The ALJ noted that Podeszwa's "detached retina on the right supports limiting him to frequent near and far acuity and occasional depth perception." (R. 27.) The ALJ also noted Podeszwa had not received treatment for his eyes or complained of limitations concerning his eyes since December 2016. (*Id*.) The ALJ considered Podeszwa's testimony that he had poor vision and stated, "which is why I provided such tailored visual limitations, even in the absence of further evidence." (*Id*.) The ALJ did not address Dr. Touger's opinion by name, but stated the following:

> I find the Disability Determination Services (DDS) opinions persuasive. Finding no severe mental impairment is consistent with the aforementioned consultative examiner's assessment. . . . It is also consistent with evidence from Dr. Thurman and Dr. Scarborough, which mention depression, but it

17

> does not appear to be an issue requiring medication or therapy. . . . Physically, medium work with postural, visual, and environmental limitations are supported by [Podeszwa's] vision at the consultative examination, as well as physical examination, which showed reduced squat, but normal strength and a normal gait. . . .

(R. 28.) The ALJ found that Podeszwa had the RFC to perform light work, except he had certain exertional, postural and environmental limitations. (R. 25.) The ALJ also found that Podeszwa had visual limitations, including frequent near and far acuity, and occasional depth perception. (*Id.*)

Podeszwa's argument fails. Under the regulations, an ALJ is "not required to articulate how he considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). In addition, an ALJ's RFC assessment need not "match or mirror the findings or opinions of any particular medical source . . . because the responsibility of assessing the RFC rests with the ALJ." *Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019). *See Rivera Misla v. Comm'r of Soc. Sec.,* No. 6:20-CV-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive."). Thus, the ALJ was not required to adopt Dr. Touger's limitation of depth perception for Podeszwa. The ALJ properly considered Podeszwa's visual impairment, including his limited treatment, complaints, and hearing testimony, and articulated reasons, supported by substantial evidence, for finding the opinions of the state agency consultants persuasive. This Court declines Podeszwa's invitation to reweigh evidence or substitute its own judgment for that of the Commissioner. *See Dyer*, 395 F.3d at 1210.

Because the ALJ conducted a thorough review of the medical evidence, followed the requirements for weighing medical proof, and reached a decision based on a detailed consideration of the medical evidence, this Court concludes that the ALJ's decision is supported by substantial evidence.

## VI.   CONCLUSION

After review of the administrative record, and considering Podeszwa's arguments, the Court finds the Commissioner's decision to deny disability is supported by substantial evidence and accords with applicable law.  Accordingly, it is hereby

ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be issued.

DONE this 20th day of September, 2022.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE